# EXHIBIT D

FALICIA RHODES v. UNITED STATES OF AMERICA                    3/14/2007
DEPOSITION OF SHERRY WHORRELL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


FALICIA RHODES,

    Plaintiff,

vs.                              CASE NO. 2:06-cv-554-WKW

UNITED STATES OF AMERICA,

    Defendant.


          * * * * * * * * * * *


    DEPOSITION OF SHERRY WHORRELL, taken pursuant to stipulation and agreement before Mallory M. Johnson, Court Reporter and Commissioner for the State of Alabama at Large, in the Law Offices of U.S. Attorney's Office, One Court Square, Montgomery, Alabama, on Wednesday, March 14, 2007, commencing at approximately 10:22 a.m.


          * * * * * * * * * * *

FALICIA RHODES v. UNITED STATES OF AMERICA                                3/14/2007
DEPOSITION OF SHERRY WHORRELL

2 (Pages 2 to 5)

Page 2

```
 1           APPEARANCES
 2  FOR THE PLAINTIFF:
 3  Mr. Jay Lewis
    LAW OFFICE OF JAY LEWIS
 4  Attorney at Law, Suite 100
    847 S. McDonough Street
 5  Montgomery, Alabama 36104
 6  FOR THE DEFENDANT:
 7  Mr. James J. DuBois
    Assistant U.S. Attorney
 8  U.S. ATTORNEY'S OFFICE
    One Court Square, Suite 201
 9  Montgomery, Alabama 36104
10  ALSO PRESENT:
11  Ms. Falicia Rhodes
12          * * * * * * * * * *
13          EXAMINATION INDEX
14  SHERRY WHORRELL
       BY MR. LEWIS            3
15
            * * * * * * * * * *
16
             STIPULATIONS
17
        It is hereby stipulated and agreed by and
18
    between counsel representing the parties that the
19
    deposition of SHERRY WHORRELL is taken pursuant to the
20
    Federal Rules of Civil Procedure and that said
21
    deposition may be taken before Mallory M. Johnson,
22
    Court Reporter and Commissioner for the State of
23
    Alabama at Large, without the formality of a
24
    commission; that objections to questions other than
25
    objections as to the form of the questions need not be
```

Page 3

```
 1  made at this time but may be reserved for a ruling at
 2  such time as the deposition may be offered in evidence
 3  or used for any other purpose as provided for by the
 4  Federal Rules of Civil Procedure.
 5       It is further stipulated and agreed by and
 6  between counsel representing the parties in this case
 7  that said deposition may be introduced at the trial of
 8  this case or used in any manner by either party hereto
 9  provided for by the Federal Rules of Civil Procedure.
10          * * * * * * * * * *
11      COURT REPORTER: And read and sign?
12      MR. DUBOIS: Yes.
13         SHERRY WHORRELL
14      The witness, having first been duly sworn to
15  speak the truth, the whole truth and nothing but the
16  truth, testified as follows:
17           EXAMINATION
18  BY MR. LEWIS:
19  Q.  Tell me your name, please.
20  A.  Sherry Whorrell.
21  Q.  Okay. Ms. Whorrell, my name is Jay Lewis.
22  We just met. I represent Ms. Rhodes in this case
23  that's been brought against the United States of
24  America based on an event that took place in January
25  of 2006.
```

Page 4

```
 1  Couple of ground rules. Just, if you will, make
 2  all of your responses verbal. Don't nod or shake your
 3  head like you're doing now --
 4  A.  Yes, sir.
 5  Q.  -- because the court reporter can't take that
 6  down. If I ask a question you don't understand or ask
 7  it in a way you don't understand, or if it sounds
 8  vague or ambiguous, just stop me and I'll rephrase
 9  it. Okay?
10  A.  Yes, sir.
11  Q.  Standard question, don't be offended. But
12  are you under the influence of any medications or
13  drugs or alcohol or anything that might impair your
14  ability to perceive my question and give me an
15  accurate response?
16  A.  No, sir.
17  Q.  Okay. Tell me how you're employed.
18  A.  I'm employed with the Postal Service. I'm
19  supervisor.
20  Q.  Okay. And what's your title?
21  A.  Supervisor, Customer Service.
22  Q.  Okay. At what location?
23  A.  Lagoon Park Station.
24  Q.  And is that the same location at which you
25  were employed January 27th, 2006?
```

Page 5

```
 1  A.  Yes, sir.
 2  Q.  Okay. What's your job as supervisor of
 3  customer service?
 4  A.  I supervise carriers and make sure they get
 5  the mail delivered.
 6  Q.  Does that post office have a postmaster?
 7  A.  We have a station manager.
 8  Q.  Okay. And who is the station manager?
 9  A.  At that time or now?
10  Q.  At that time.
11  A.  His name was Arnez Mayberry.
12  Q.  Okay. And who is the station manager now?
13  A.  Phil Story.
14  Q.  We're here about one incident that took place
15  last year at about 2:45 in the afternoon. Tell me
16  what you remember from that time.
17  A.  I was at my desk. The clerk hollered back
18  and told me they needed a supervisor, that someone had
19  fell in the lobby.
20  Q.  Which clerk was that?
21  A.  Her name was Annette Payne.
22  Q.  And where was your office with relation to
23  the lobby?
24  A.  My desk is in the very back of the building.
25  Q.  Okay.
```

FALICIA RHODES v. UNITED STATES OF AMERICA                 3/14/2007
DEPOSITION OF SHERRY WHORRELL

3 (Pages 6 to 9)

Page 6

1   A. I don't have an office. It's just in the
2  middle of the floor.
3   Q. Okay. And how far is that from where this
4  fall took place?
5   A. I don't -- it's in the back of the building.
6  I'm not good with distances. But 100 feet at least.
7   Q. Okay. So Ms. Payne called you and said
8  somebody had fallen in the lobby. What did you do?
9   A. I went up front to see what was going on.
10  Q. And what did you see?
11  A. Ms. Rhodes was standing at the table in the
12 lobby.
13  Q. Is that the red table?
14  A. Yes, ma'am. I mean, yes, sir.
15  Q. And describe any conversation you had with
16 her.
17  A. I asked her if she was okay. She told me she
18 was, that she was a little shook up and a little
19 scared. I asked her what had happened. She told me
20 she thought she saw something on the floor and
21 slipped. Or she didn't see it, but she slipped and
22 she thought there was something on the floor. Said
23 some gentleman had helped her. And he had apparently
24 told the clerks, and they came and got me.
25  Q. Did she point out anything on the floor to

Page 7

1  you?
2   A. No. She pointed to the area where she fell.
3   Q. Okay. Did she tell you that she could see
4  something on the floor?
5   A. She said she thought she saw something shiny.
6   Q. Okay. And did you inspect the floor?
7   A. Yes, sir.
8   Q. And what did you find?
9   A. Nothing.
10  Q. Did you find any wet spots?
11  A. No, sir.
12  Q. And what did you do then?
13  A. I asked her again if she was okay. Then I
14 called the custodian up front.
15  Q. And for what did you call the custodian?
16  A. To check the floor himself and to wipe,
17 sweep, mop it, whatever he felt it needed just in case
18 there was something that neither of us were seeing.
19  Q. Okay. So you were -- you were not
20 sufficiently confident about your observations to
21 determine that there was nothing on the floor?
22  A. I felt there was nothing on the floor, but I
23 wanted to take a precautionary measure.
24  Q. Okay. And was that custodian Mr. Thomas?
25  A. Yes, sir.

Page 8

1   Q. Okay. What did he do?
2   A. He went -- after he looked, he didn't see
3  anything. He went and got the signs and got the stuff
4  to sweep the floor. I asked Ms. Rhodes again if she
5  was okay, and she left. Then I went and got the
6  camera, took pictures, and went from there.
7   Q. We have been provided some information. I'm
8  not going to make this an exhibit, but I will show you
9  what's been marked as DEF008, DEF009, as a part of the
10 response to a request for production or initial
11 disclosure proposal by the attorney for the United
12 States. And I'll ask that you look at page DEF008.
13 Are those reproductions of the photographs that you
14 took on that occasion?
15  A. Yes, sir.
16  Q. Okay. And DEF009, are those three other
17 photographs that are reproductions that you took?
18  A. Yes, sir.
19  Q. And there are some notations made on the
20 photographs -- on the page on which the photographs
21 are reproduced. Who made those notations?
22  A. I did because those are my initials.
23  Q. Okay. And that's on DEF008 as well as
24 DEF009?
25  A. Yes, sir.

Page 9

1   Q. The notations are yours?
2   A. Yes, sir.
3   Q. Okay. I noticed also that there's a postmark
4  on that. What is the purpose of the postmark?
5   A. I postmarked it so they would know what date
6  they were taken, because our camera is just a
7  Polaroid.
8   Q. Okay.
9   A. And I had the clerk initial it.
10  Q. All right.
11  A. And I postmarked it.
12  Q. And that applies to both DEF008 and DEF009?
13  A. Yes, sir.
14  Q. Okay. When did you next have any contact
15 with Ms. Rhodes, if you did?
16  A. She called back around 4:20 in the
17 afternoon. Told me she was having pain and she was
18 going to go to the emergency room, and did she need
19 a -- what kind of number she needed. And I told her I
20 didn't handle that, but I gave her the contact
21 information in Birmingham.
22  Q. Did you have -- and whose contact information
23 did you give her?
24  A. At the time, it was Paul Denham. He's in
25 safety in Birmingham.

FALICIA RHODES v. UNITED STATES OF AMERICA                3/14/2007
DEPOSITION OF SHERRY WHORRELL

4 (Pages 10 to 13)

Page 10

1   Q. Did you ever check back with Mr. Denham to
2   see whether he had provided any information to
3   Ms. Rhodes?
4   A. Well, I called him after I talked to her to
5   let him know she would be calling him, what it was
6   about. And he said she had already got him, because
7   she got him before I called to say she was calling.
8   He said, yeah, I'm on the phone with her now. I said
9   okay.
10  Q. Okay. Did you have any other contact with
11  Ms. Rhodes?
12  A. No, I haven't talked to her since then.
13  Q. Okay. Have you seen her in the post office
14  since then?
15  A. No, sir.
16  Q. Just as a matter of your routine, do you get
17  out to the lobby, to the post office box area very
18  often?
19  A. I don't. No. That's not my area.
20  Q. Okay. You later wrote up a statement
21  regarding what had happened that day, correct?
22  A. Yes, sir.
23  Q. And is that statement one that is normally
24  required after an incident which there may or may not
25  be an injury?

Page 11

1   A. Yes. Well, I've never dealt with an accident
2   with an injury before. But yes, I was asked to
3   provide a statement in case there were any issues
4   later.
5   Q. Prior to this incident, had you had any
6   occasion in which a customer had fallen in that area?
7   A. No, sir.
8   Q. Okay. Since that incident, has any such
9   incident occurred?
10  A. No, sir.
11  Q. So as far as you know, this is the only time
12  anybody has ever fallen in the lobby of the post
13  office?
14  A. Yes, sir. Well, in that post office as long
15  as I've been there.
16  Q. Okay. And how long have you been there?
17  A. 17 years.
18  Q. Pretty good safety record.
19  A. I try.
20  Q. Are you also responsible for reporting
21  accidents involving motor vehicles?
22  A. Yes, sir.
23  Q. Okay. So you're generally responsible for
24  any unusual -- for reporting any unusual incidents
25  that take place?

Page 12

1   A. Any incident or accident we have, we have to
2   report. Okay. We have forms to report.
3   Q. All right. Describe Ms. Rhodes' demeanor
4   when you first saw her.
5   A. She was a little -- you could tell she was a
6   little shook up. But other than that, I mean, she was
7   nice. And I mean, honestly, that's about all I -- I
8   remember she was nice. She wasn't rude or anything.
9   And she was a little shook up, and that's what she
10  told me, she was a little shook up.
11  Q. Did she show you anything on her clothes or
12  shoes that she noticed?
13  A. No, sir.
14  Q. Okay. Have you told me everything that you
15  can recall about that -- about that incident?
16  A. As far as I know.
17     MR. LEWIS: All right. Would you let me go
18  out with her for just a second?
19     MR. DUBOIS: Sure.
20     MR. LEWIS: I think we're about through.
21     (Brief recess)
22     MR. LEWIS: Ms. Whorrell, I don't have any
23  further questions. Thank you for coming.
24     (The deposition concluded at 10:32 a.m.)
25  * * * * * FURTHER DEPONENT SAITH NOT * * * * *

Page 13

1          REPORTER'S CERTIFICATE
2   STATE OF ALABAMA
3   MONTGOMERY COUNTY
4      I, Mallory M. Johnson, Court Reporter and
5   Commissioner for the State of Alabama at Large, hereby
6   certify that on Wednesday, March 14, 2007, I reported
7   the deposition of SHERRY WHORRELL, who was first duly
8   sworn or affirmed to speak the truth in the matter of
9   the foregoing cause, and that pages 3 through 12
10  contain a true and accurate transcription of the
11  examination of said witness by counsel for the parties
12  set out herein.
13     I further certify that I am neither of kin nor of
14  counsel to any of the parties to said cause, nor in
15  any manner interested in the results thereof.
16     This 11th day of April, 2007.
17
18
19
20
                _____
21              MALLORY M. JOHNSON, COURT REPORTER
                And Commissioner for the
                State of Alabama at Large
22
                MY COMMISSION EXPIRES: 2/24/09
23
24
25

Page 14

1          SIGNATURE OF WITNESS
2          I, SHERRY WHORRELL, hereby certify that I
3   have read the transcript of my deposition consisting
4   of pages 3 through 12, and except for the corrections
5   listed below, certify that it is a true and correct
6   transcription.
7
8   _____
    SHERRY WHORRELL
9
10
    SWORN TO AND SUBSCRIBED before me
11  this _____ day of _____, 2007.
12
    _____
13  NOTARY PUBLIC
14
              * * * * * * * * * *
15
    Page  Line  Correction and reason therefor
16
17
18
19
20
21
22
23
24
25