IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FALICIA RHODES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: **2:06-CV-554 WKW** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the United States, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files this Memorandum in Support of Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, there are no genuine disputes of material fact, and Defendant is entitled to judgment as a matter of law on Plaintiff's claim.

**STATEMENT OF THE CASE**

This is a slip-and-fall lawsuit for alleged negligence brought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("FTCA"). Plaintiff, Falicia Rhodes, alleges that she slipped and fell in the lobby of the United States Post Office at Lagoon Park, Montgomery, Alabama, on what she speculates was a "freshly-waxed" and "still-wet" spot on the floor. (Pl. Dep. 24:18-21, Ex. 2).[1] She claims that she hurt her back and hip, and that as a result of her fall, she has had more headaches and can no longer wear high-heel shoes. (Pl. Dep. 25:1-3).

---

[1]Defendant cites depositions as follows: Deponent/Witness's last name, source (Dep. for deposition), page number(s): line number(s). Furthermore, Defendant will cite to declarations as follows: Declarant's last name, Dec., and paragraph number.

Plaintiff, however, has no evidence that Defendant waxed the floor of the lobby on the day she fell or that Defendant had actual or constructive notice that there was any substance on the floor that might have posed a hazard to customers. Since Defendant is not the absolute insurer of the safety of its customers, Plaintiff's inability to show the notice required to maintain a negligence action is fatal to her claim. Accordingly, Plaintiff's claim fails as a matter of law.

## STATEMENT OF THE FACTS

**I.     Plaintiff's Fall at the Lagoon Park Post Office.**

On Friday, January 27, 2006, Plaintiff arrived at the Lagoon Park Post Office in Montgomery, Alabama, at approximately 2:40 P.M. (Pl. Dep. 25:4-10). Plaintiff had a P.O. Box at the Post Office, and she checked her mail on a daily basis. (Pl. Dep. 30:18-20). On this particular day, Plaintiff stopped at the Post Office while she was headed to school to pick up her daughter at 3:00 P.M., after running some errands with a friend. (Pl. Dep. 26:12-16, 27:1-20, 31:22-32:2). Plaintiff left her friend in the car, with the engine running, and entered the Post Office. (Pl. Dep. 31:8-18).

The Lagoon Park Post Office has a lobby, which contains the P.O. Boxes as well as self-service stamp machines, and a staffed counter area. (Worrell Dec. ¶ 3). Plaintiff, who was looking toward her P.O. Box and thinking about picking up her daughter, did not see anything on the floor or notice anything different from usual when she entered the lobby. (Pl. Dep. 34:6-11, 37:15-16). She saw two customers: a woman who was standing in the middle area between two walls of P.O. Boxes and a man who was standing near the entrance to the staffed counter area, but she did not see any Postal Service employees in the lobby. (Pl. Dep. 35:4-36:21). As Plaintiff was walking toward her P.O. Box, she fell down at approximately 2:45 P.M. on what she subsequently claimed was a

"slick spot" on the floor. (Pl. Dep. 34:6-35:3, 40:9-11, Ex. 3). A customer helped Plaintiff to her feet and then notified a postal employee in the counter area about the fall. (Pl. Dep. 39:1-23).

After she fell down, Plaintiff attributed her fall to what she speculated was a "freshly-waxed" and "still-wet" floor. (Pl. Dep. 40:9-16, Ex. 2). Plaintiff, however, did not see any Postal Service employees putting wax on the floor. (Pl. Dep. 45:6-9). She also did not see any buckets, wax bottles, or mops in the lobby. (Pl. Dep. 45:10-12). Instead, Plaintiff claims that she assumed that the floor had just been waxed solely because she saw an unknown residue on her left shoe and a puddle of water on the floor. (Pl. Dep. 44:23-45:5). She describes the unknown residue as a white, odorless, powder-like substance on the outer, left side of her left shoe. (Pl. Dep. 40:17-25, 41:1-19). Plaintiff, who did not see any of this white residue on the floor in the lobby, has no idea when she last looked at her shoes prior to entering the Post Office. (Pl. Dep. 41:23-42:1, 47:16-21). She describes the alleged puddle as being clear and odorless, with nothing floating in it. (Pl. Dep. 43:12-16, 44:7-8, 91:22-25). Plaintiff's clothes were not wet after her fall, and she never touched the alleged puddle to check its temperature or consistency. (Pl. Dep. 43:22-44:6). Plaintiff admits that she has no idea how long there might have been anything on the floor in the lobby, and she has no evidence that the Post Office knew that there might be anything on the floor. (Pl. Dep. 45:13-23).

II. **Defendant Did Not Wax the Floor on January 27, 2006, and Had No Notice That There Might Be any Water or Other Substance on the Floor in the Lobby.**

There were approximately 197 customers at the Lagoon Park Post Office on January 27, 2006, between 9:00 A.M. and 2:45 P.M., who walked through the lobby before Plaintiff and transacted business at the staffed counter. (Worrell Dec. ¶ 3). In addition, there were an unknown number of customers who checked P.O. Boxes or bought stamps from the machines in the lobby.

(Worrell Dec. ¶ 3). None of the more than 197 customers who had been in the Post Office before Plaintiff reported seeing any liquids or other substances on the floor in the lobby, and none of them reported anyone falling down in the lobby. (Worrell Dec. ¶ 3; Pl. Dep. 45:16-19).

Sherry Worrell, the Customer Service Manager at the Lagoon Park Post Office, was notified by a counter clerk that Plaintiff had fallen in the lobby, and she immediately went to help. (Worrell Dep. 4:18-23, 5:14-6:9). Worrell asked Plaintiff whether she was okay, and Plaintiff stated that she was more shaken up than anything, and that she thought she saw something shiny on the floor. (Pl. Dep. 48:6-11; Worrell Dep. 6:15-24). Worrell inspected the floor, and she did not see any wet spots or substances. (Worrell Dep. 7:5-11; Worrell Dec. ¶ 2, Ex. A).

Although Worrell did not see anything on the floor, as a precautionary measure, she called Robert Thomas, the custodian at Lagoon Park who maintained the floors, and she asked him to inspect the floor for any wet spots or substances and to mop and place a warning sign. (Worrell Dep. 7:13-23; Thomas Dep. 5:4-10; Thomas Dec. ¶¶ 1-2). She also asked him whether he had waxed the floor that day, and he responded that he had not. (Worrell Dec. ¶ 2, Ex. A; Thomas Dec. ¶ 5).

In fact, on that particular day, Thomas used a dry mop to clean the lobby floor between 7:00 A.M. and 8:00 A.M. and did not wax the floor. (Thomas Dec. ¶ 4; Thompson Dep. 5:15-21). There were no liquids or other substances on the floor when he was in the lobby that morning, and he is not aware of the floor being wet or having any substances on it at any time that day. (Thomas Dec. ¶ 4). While he has no set schedule, Thomas generally waxes the floors on Saturday mornings when the counter area is closed and there are fewer customers in the lobby. (Thomas Dec. ¶¶ 2-3). Thomas has used the same wax the entire time he has been at the Lagoon Park station. (Thomas Dec. ¶ 3). The wax has a very strong chemical smell when wet and a slightly thicker consistency

than water. (Thomas Dec. ¶ 3). He does not mix the wax with any water for application but instead applies the wax directly to the floor with a mop. (Thomas Dec. ¶ 3). As a result, the waxing process does not create or leave any puddles of water. (Thomas Dec. ¶ 3). He then uses a blow-drying machine to apply air to the floor to make the wax dry in approximately ten to fifteen minutes. (Thomas Dec. ¶ 3). The wax looks clear when applied to the floor, and it dries with a clear finish. (Thomas Dec. ¶ 3). The wax does not create any sort of white powder or residue on the floor. (Thomas Dec. ¶ 3).

At Worrell's request, Thomas checked the floor where Worrell indicated Plaintiff had fallen, and he did not see any wet spots or substances. (Worrell Dep. 8:2-6; Thomas Dep. 6:16-7:9). Nevertheless, pursuant to Worrell's instructions, Thomas placed a warning sign and mopped the floor as a precautionary measure. (Thomas Dep. 6:5-7:9; Thomas Dec. ¶ 5; Worrell Dep. 6:2-8).

### III.   Plaintiff's FTCA Administrative Claim and Lawsuit.

Plaintiff left the Post Office without any assistance but subsequently called Worrell to indicate that she had some pain in her hip and back and was going to the emergency room. (Pl. Dep. 9:14-25). Plaintiff went to the Baptist East Emergency Room, where x-rays were negative for any broken bones. (Pl. Dep. 56:17-21, 58:20-24). Plaintiff was prescribed some pain medication and attended two weeks of physical therapy. (Pl. Dep. 61:16-62:19, 73:3-5). At the completion of the physical therapy, she told her therapist that she felt good and that she had not had a headache in over a week. (Pl. Dep. 76:17-21). Plaintiff now claims that, as a result of her fall, she suffers intermittent headaches and that she can no longer wear high-heel shoes. (Pl. Dep. 82:12-17, 88:11-17).

On April 3, 2006, Plaintiff filed an administrative tort claim pursuant to the FTCA with the United States Postal Service, seeking $25,000.00 in damages. (Pl. Dep. 91:3-11, Ex. 8). After

Plaintiff's administrative claim was denied, she filed the present lawsuit seeking $50,000.00 in damages.[2] (Pl. Dep. 23, Ex. 2). In her lawsuit, she alleges that she slipped and fell on a "freshly waxed" and "still-wet" spot on the floor. (Pl. Dep. 24:18-21, Ex. 2). She claims that Defendant was negligent in creating this condition and not warning her about it. (Pl. Dep. 24:22-25, Ex. 2).

## ARGUMENT AND CITATION OF AUTHORITY

The Court should grant summary judgment on Plaintiff's claim because Plaintiff cannot satisfy the elements of a negligence cause of action. The Federal Rules of Civil Procedure require that summary judgment be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once a party moving for summary judgment demonstrates a lack of any genuine issues of material fact, the non-moving party has the burden of coming forward with specific facts and cannot merely rest on the pleadings. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the admissible record "taken as a whole" could not lead a reasonable fact-finder to find for the non-moving party, then there is no "genuine issue for trial" and summary judgment should be granted. See id. For the reasons that follow, Plaintiff cannot show that Defendant breached the applicable duty of care required to maintain a negligence claim.

The FTCA is a limited waiver of the United States's sovereign immunity. See Andrews v. United States, 121 F.3d 1430, 1438 (11th Cir. 1997). The statute permits lawsuits against the United States for damages caused by the tortuous conduct of federal employees when a private actor would

---

[2]Since a district court lacks jurisdiction to award damages in excess of the amount set forth in a plaintiff's FTCA administrative complaint absent newly-discovered evidence or intervening events, Plaintiff's damage request in this lawsuit is capped at $25,000 regardless of the damages sought in her Complaint. See Davis v. Marsh, 807 F.2d 908, 912 (11th Cir. 1987).

be liable for the same conduct under the law of the place where the tort occurred. See id. Pursuant to the FTCA, therefore, the substantive law applied in a negligence claim against the United States is the law of the state where a negligent act or omission allegedly occurred. See Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004). To state a negligence claim under Alabama law, a plaintiff bears the burden of showing: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached the duty; and (3) that the breach of the duty was the proximate cause of the plaintiff's injury. See Raspilar v. Bruno's Food Stores, Inc., 514 So.2d 1022, 1023 (Ala. 1987).

Plaintiff's negligence claim fails as a matter of law because she cannot show that Defendant breached the applicable duty of care. In Alabama, the owner of a premises owes an invitee, such as Plaintiff, the duty to use reasonable care to maintain the premises in a reasonably safe manner or, if there is a dangerous condition, to give sufficient warning so that an invitee can avoid the danger through the use of ordinary care.[3] See Hose v. Winn-Dixie Montgomery, Inc., 658 So.2d 403, 404 (Ala. 1995); Vargo v. Warehouse Groceries Mgmt., Inc., 529 So.2d 986, 986 (Ala. 1988). Importantly, a property owner is not "an insurer of the customer's safety," and there is no presumption of negligence simply because an invitee is injured. See Hose, 658 So.2d at 404. See also Riverview Regional Med. Ctr., Inc. v. Williams, 667 So.2d 46, 48 (Ala. 1995) ("the doctrine of res ipsa loquitur is not applicable to slip and fall cases.").

Instead, in a "slip and fall" lawsuit, as here, a plaintiff seeking to show that a property owner breached a duty of care must first show that the defendant had actual or constructive notice of the offending condition that allegedly caused the plaintiff to fall or was delinquent in failing to have such

---

[3] Plaintiff, who was visiting the Post Office to check her mail, is considered an invitee under Alabama law. See Boyd v. Sears, Roebuck, and Co., 642 So.2d 949, 950 (Ala. 1994).

notice. See Maddox v. K-Mart Corp., 565 So.2d 14, 16 (Ala. 1990); Brown v. Autry Greer and Sons, Inc., 551 So.2d 1049, 1050 (Ala. 1989); Marino v. Bruno's Inc., 681 So.2d 602, 604 (Ala. Civ. App. 1996). A plaintiff may satisfy her burden of showing notice by establishing that a property owner created a dangerous condition that caused her to fall and thus had imputed notice of the condition. See Nelson v. Delchamps, Inc., 699 So.2d 1259, 1261-1262 (Ala. Civ. App. 1997). A plaintiff may also offer evidence that a substance had been on the floor for such a long period of time that the defendant should be charged with constructive notice of its existence. See Speer v. Pin Palace Bowling Alley, 599 So.2d 1140, 1143-1144 (Ala. 1992); Wimberly v. K-Mart, Inc., 522 So.2d 260, 261 (Ala. 1988). Regardless of the manner of showing notice, a plaintiff cannot rely upon mere speculation or conjecture to meet her burden. See Riverview Regional Med. Ctr., 667 So.2d at 48; Speer, 599 So.2d at 1143-1144; Logan v. Winn-Dixie Atlanta, Inc., 594 So.2d 83, 84-85 (Ala. 1992); Cash v. Winn-Dixie Montgomery, Inc., 418 So.2d 874, 876 (Ala. 1982).

      In the present case, Plaintiff is unable to show that Defendant had any actual or constructive notice of any liquid or other substance on the floor at the Lagoon Park Post Office, and thus she cannot show that Defendant breached any duty of care. See Vargo, 529 So.2d at 986. As an initial matter, Plaintiff cannot show that Defendant created any hazardous condition at the Lagoon Park Post Office. She speculates that she fell on a "freshly-waxed" and "still-wet" floor but offers no evidence that the substance on her shoe was wax or, if it were, that it had been applied to the floor by a Postal Service employee instead of being tracked in by Plaintiff or spilled by another customer. (Pl. Dep. 45:6-9). Plaintiff did not see any buckets, wax bottles, mops, or postal employees in the lobby. (Pl. Dep. 45:10-12). Moreover, Plaintiff saw none of the white residue that she saw on her shoe on the lobby floor, and she has no idea when she last looked at her shoes prior to entering the

Post Office. (Pl. Dep. 41:23-42:1, 47:16-21). In fact, contrary to Plaintiff's unsupported speculation and conjecture, Defendant did not apply wax to the floor on January 27, 2006. (Thomas Dec. ¶ 4). In addition to Thomas's undisputed testimony that he did not wax the floor that day, the undisputed evidence establishes that the wax used by at the Post Office has a clear finish, leaves no puddles of water or white powdery residue, and exudes a strong chemical smell while wet. (Thomas Dec. ¶¶ 3-4). In contrast, Plaintiff claims that she saw a puddle of clear, odorless water on the floor and an odorless, white, powdery substance on one shoe. (Pl. Dep. 40:17-25, 41:1-19, 43:12-16, 44:7-8, 91:22-25). In short, Plaintiff's speculation and conjecture are insufficient to show that she slipped on any wax, much less that Defendant applied any wax to the floor. See Speer, 599 So.2d at 1143-1144; Zundel v. Wal-Mart Stores, Inc., 1997 U.S. Dist. LEXIS 12436, at *5 (S.D. Ala. Aug. 5, 1997) ("Exhibit A" to Deft's Mtn. for Summ. Jdmt.). In Zundel, 1997 U.S. Dist. LEXIS 12436, at *2, for example, the Court dealt with a similar situation involving speculation by a plaintiff. The plaintiff slipped on a brownish substance on the floor while shopping at a store, and he sued the store for negligence. See id. The plaintiff claimed that the substance was wax placed there by the defendant and that the defendant was thus presumed to have the required notice. See id. at *4. He offered no evidence, however, about how the substance got on the floor, what the substance actually was, or how long the substance had been on the floor. See id. at *2-3. The Court noted that other than the plaintiff's speculative testimony, he offered no evidence that the substance was indeed wax. See id. at *6. The Court also noted the plaintiff had failed to offer any evidence that the defendant's floor care products created a brownish substance. See id. at *7-8. The Court concluded that "the plaintiff's theory that he fell in wax left over from the defendant's floor care process is just that, a theory. It is well established that speculation, without any supporting evidence, is insufficient to

raise a material question of fact and defeat summary judgment." See id. at *8. Like the plaintiff in Zundel, Plaintiff's claim that she slipped on wax applied to the floor by Defendant is also based solely on speculation, without supporting evidence. (Pl. Dep. 44:12-45:5). The undisputed evidence establishes that Defendant **did not** wax the floor. (Thomas Dec. ¶ 4; Thompson Dep 5:15-21). Accordingly, it is undisputed that Defendant did not create any hazardous condition and thus cannot be presumed to have notice. See Riverview Regional Med. Ctr., 667 So.2d at 48 (directing judgment for defendant when plaintiff claimed he fell on freshly-mopped floor, but undisputed evidence showed floor had not been mopped).

Since Plaintiff cannot show that Defendant applied any wax to the floor, she must show that Defendant had actual or constructive notice of there being some other substance on the floor that posed a risk to customers. See Brown, 551 So.2d at 1050. Plaintiff cannot make this showing. Initially, Defendant has offered undisputed evidence that it had no actual notice. Notably, more than 197 customers walked through the lobby before Plaintiff's fall, and two of them were in the lobby when Plaintiff entered the Post Office. (Worrell Dec. ¶ 3; Pl. Dep. 35:4-36:21). None of them reported falling down or noticing any substance on the floor. (Worrell Dec. ¶ 3). Moreover, the custodian responsible for maintaining the floors did not know about any substance on the floor. (Thomas Dec. ¶ 4). Plaintiff also cannot show constructive notice as she admits that she has no idea how long any substance might have been on the floor in the lobby. (Pl. Dep. 45:13-15). She further admits that she has no evidence that anyone in the Postal Service knew about there being any substance on the floor. (Pl. Dep. 45:20-23). Indeed, Plaintiff saw none of the white residue that she saw on her shoe on the floor, and the water (alleged to exist by Plaintiff) was clear and had nothing floating in it. (Pl. Dep. 41:23-42:1, 44:7-8, 47:16-21, 91:22-25). Accordingly, there was nothing

to suggest that any puddle or other substance had been on the floor long enough to infer constructive notice.[4] See Martino, 681 So.2d at 605. Plaintiff's speculation and conjecture are thus insufficient to satisfy her burden of showing actual and constructive notice. See Speer, 599 So.2d at 1143-1144; Logan, 594 So.2d at 84-85.

In conclusion, Defendant is not the absolute insurer of the safety of its customers. See Hose, 658 So.2d at 404 ("No presumption of negligence arises from the mere fact of injury"). Instead, "[a]ctual or constructive notice of the presence of the offending substance must be proven before the proprietor can be held responsible for the injury." See Cash, 418 So.2d at 876 (emphasis added). In this case, Defendant did not wax the floor and thus cannot be presumed to have notice of any dangerous condition. See Riverview Regional Med. Ctr., 667 So.2d at 48. Furthermore, there is no evidence that Defendant had actual or constructive notice of any alleged substance being on the floor. See Vargo, 529 So.2d at 986 (affirming grant of summary judgment where plaintiff slipped in water on floor but offered no evidence that defendant knew water was on floor or that water was on floor so long as to impute constructive notice). Since Plaintiff cannot show notice, her claim fails as a matter of law. See Speer, 599 So.2d at 1143. See also East v. Wal-Mart Stores, Inc., 577 So.2d 459, 460-461 (Ala. 1991) (affirming summary judgment where plaintiff slipped on puddle but had no evidence defendant had notice of puddle prior to her fall). Accordingly, this Court should enter judgment for Defendant. See Riverview Regional Med. Ctr., 667 So.2d at 48 (directing judgment

---

[4]Indeed, there is no evidence that any of the white substance that Plaintiff allegedly saw on her shoe was on the floor of the Post Office, since Plaintiff saw it only on her shoe. (Pl. Dep. 41:23-42:1). She could have stepped in the white substance anywhere. Moreover, Worrell and Thomas did not notice water or anything else on the floor when they inspected it after the fall. (Worrell Dep. 7:5-11; Worrell Dec. ¶ 2, Ex. A; Thomas Dep. 6:16-7:9).

for defendant when plaintiff had nothing but speculation to support theory that he slipped on water from recently-mopped floor, when undisputed evidence showed floor had not been mopped).

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion for Summary Judgment in its entirety and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 18th day of May, 2007.

                                                     Respectfully submitted,

                                                    LEURA G. CANARY
                                                    United States Attorney

By:    s/James J. DuBois
           JAMES J. DUBOIS
           Assistant United States Attorney
           Georgia Bar No. 231445
           United States Attorney's Office
           Post Office Box 197
           Montgomery, AL 36101-0197
           Telephone: (334) 223-7280
           Facsimile: (334) 223-7418
           E-mail: james.dubois2@usdoj.gov

**Of Counsel:**

Conny Davinroy Beatty
United States Postal Service
Law Department, St. Louis Office
PO Box 66640
St. Louis, Missouri 63166-6640
Telephone: (314) 872-5172
Facsimile: (314) 872-5192

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 18, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jay Lewis, Esq.

                                                                                  s/James J. DuBois
                                                                                   Assistant United States Attorney