IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FALICIA RHODES, | * | |
|    Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. 2:06-cv-554-WKW |
| | * | |
| UNITED STATES OF AMERICA, | * | |
|    Defendant. | * | |

**PLAINTIFFS' RESPONSE TO THE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, FALICIA RHODES, in the above styled cause, by and through her counsel of record, and responds to the defendant's motion for summary judgment as follows:

**I. STATEMENT OF MATERIAL FACTS**

1. On or about January 27, 2006, at approximately 2:45 p.m., Falicia Rhodes was conducting business as a customer of the United States Post Office[1] at Lagoon Park in Montgomery, Alabama, when she slipped and fell on a freshly waxed and still-wet spot on the floor. (Exhibit 1, Depo. of Falicia Rhodes, 24:14-24:21; 25:4-25:10). Rhodes was at the post office that day to retrieve mail from her post office box. (Exhibit 1, Depo. of Falicia Rhodes, 30:12-30:15).

2. Rhodes goes to her post office box at the Lagoon Park Post Office daily. (Exhibit 1, Depo. of Falicia Rhodes, 30:18-30:20). On the date of the incident, Rhodes was walking her regular path to her post office box. (Exhibit 1, Depo. of Falicia Rhodes, 36:22-37:5).

---

[1] It is undisputed that the United States Postal Service operates the United States Post Offices. It is also undisputed that the United States Postal Service is operated by the United States federal government.

3. There were no warning signs, pylons, or other devices present to warn Rhodes of the danger she faced. (Exhibit 1, Depo. of Falicia Rhodes, 24:22-24:25).

4. Rhodes fell because the floor was slick. She had residue all over her shoes, which were also now wet from the residue. While standing, Rhodes looked and saw that the floor had been waxed and it was still wet. (Exhibit 1, Depo. of Falicia Rhodes, 40:9-40:16; 44:9-44:10). Rhodes also saw a puddle of water on the floor in the area where she fell. (Exhibit 1, Depo. of Falicia Rhodes, 42:13-42:21; 43:12-43:16).

5. Rhodes injured her lower back and hip when she fell on the wet, freshly waxed floor. (Exhibit 1, Depo. of Falicia Rhodes, 25:1-25:3).

6. One of the two people in the post office lobby rushed over to Rhodes after she fell to see if she was all right. (Exhibit 1, Depo. of Falicia Rhodes, 35:4-35:8; 36:14-36:18). After helping her up, he went inside to alert one of the postal clerks that Rhodes had fallen. (Exhibit 1, Depo. of Falicia Rhodes, 39:20-39:23). The postal clerk called Sherry Whorrell, Supervisor of Customer Service, over to the scene. (Exhibit 1, Depo. of Falicia Rhodes, 46:4-46:11; 47:22-48:1; Exhibit 2, Depo of Sherry Whorrell, 4:17-5:1).

7. Rhodes showed Whorrell where she had fallen. Rhodes and Whorrell then both slid their feet over the area where Rhodes had fallen. Rhodes asked Whorrell if she saw that the floor was wet. Whorrell admitted that the floor was wet. Whorrell called the custodian, Robert Thomas, to mop the floor and to put up a "wet floor" warning sign. (Exhibit 1, Depo. of Falicia Rhodes, 47:9-47:15; 48:12-48:24; 50:9-50:11; Exhibit 3, Depo. of Robert Thomas, 4:25-5:6; 6:16-7:9).

8. The shoes Rhodes wore that day had rubber soles. (Exhibit 1, Depo. of Falicia Rhodes,

28:23-28:24). Rhodes had never tripped or fallen while wearing those shoes before. (Exhibit 1, Depo. of Falicia Rhodes, 28:21-28:22).

9. Rhodes then left the post office to go pick up her daughter from school. Rhodes asked her friend, who had been waiting for her in Rhodes' car, to drive. While on route to the school, Rhodes told her friend that her head and neck had begun to hurt. They decided to go to the hospital after they picked up Rhodes' daughter. (Exhibit 1, Depo. of Falicia Rhodes, 51:8-52:24).

10. Rhodes sought diagnosis and treatment at Baptist Medical Center East in Montgomery, Alabama, and has received follow-up care from Obelisk Healthcare in Montgomery, Alabama, for hip pain, lower back pain, neck pain and headaches. (Exhibit 1, Depo. of Falicia Rhodes, 53:3-53:10; 62:20-62:24).

11. Rhodes still suffers from headaches and neck pain as a result of the fall. (Exhibit 1, Depo. of Falicia Rhodes, 82:12-82:15; 84:11-84:13; 85:7-86:2; 86:5-86:10).

## II. LEGAL ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Under the provisions of Rule 56 ( c), F.R.C.P., summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56( c ), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*. In ruling, the Court "must

believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

In entertaining a motion for summary judgment, the court should review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

**B.  ARGUMENT-NEGLIGENCE, WANTONNESS AND/OR RECKLESSNESS UNDER THE FEDERAL TORT CLAIMS ACT**

To recover damages in a slip and fall case, a plaintiff must prove that the fall resulted from a defect or instrumentality located on the premises, that the fall was a result of the defendant's negligence, and that the defendant had or should have had notice of the defect or instrumentality before the accident. *Logan v. Winn-Dixie Atlanta, Inc.,* 594 So.2d 83, 84 (Ala.1992).

There are two categories of business invitee slip and fall cases in Alabama. The first line of cases is when a plaintiff slips and falls and alleges that the business negligently failed to clean

up a substance on the floor. In this type of case the plaintiffs must prove (1) that the substance the plaintiff slipped on had been on the floor for a sufficient length of time to impute constructive notice; or (2) that the business had actual notice that the substance was on the floor; or (3) that the business was delinquent in not discovering and removing the substance. *Nelson v. Delchamps,* 699 So.2d 1259, 1261 (Ala.Civ.App.1997).

The second line of business invitee slip and fall cases deals with a situation where the plaintiff claims the business *negligently created* on the premises a hazardous condition that proximately caused injury to the plaintiff. *Id.*

The present case belongs to the second line of business invitee slip and fall cases. Plaintiff has testified that she slipped and fell inside the Lagoon Park Post Office on a freshly waxed and still-wet spot on the floor. Since no one other than the custodian or another post office employee would wax the floors of the Lagoon Park Post Office and no warning signs or pylons were present to warn Rhodes of the danger she faced, the defendant was negligent.

"When the defendant or his employees have affirmatively created the dangerous condition, plaintiff need not introduce evidence that defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts *presume notice*." *Dunklin v. Winn-Dixie of Montgomery, Inc.,* 595 So.2d 463, 465 (Ala.1992) (italics added). In the present case, the defendant had notice of the freshly waxed, wet floor because the defendant had created this hazardous condition that proximately caused injury to Rhodes. The defendant then failed to use reasonable care by not placing warning signs or pylons in front of the still-wet area.

Rhodes has presented substantial evidence that she slipped on a freshly waxed, still-wet floor at the Lagoon Park Post Office. She stated she had residue all over her shoes and while

standing back up, saw that the floor had been waxed and was still wet. Rhodes also testified that she showed Sherry Whorrell, the post office supervisor, the wet area of the floor where she slipped and that Whorrell admitted that the floor was wet. Then Whorrell called the custodian, Robert Thomas[2], up front to mop the floor and put up a warning sign in front of that area of the floor.

The post office failed to take the reasonable safety precautions of placing warning signs or pylons around the slippery, wet area of the floor and that failure led to a hazardous condition. The United States of America is liable for Rhodes' damages.

## CONCLUSION

There is substantial dispute on material facts; therefore, the defendant is not entitled to judgment as a matter of law and its motion for summary judgment must be denied.

RESPECTFULLY SUBMITTED on this the 12th day of June, 2007.

/s/ CAROL GERARD
Carol Gerard
Law Offices of Jay Lewis, LLC
P.O. Box 5059

---

[2] At his deposition on **March 14, 2007**, Thomas "vaguely remembers" the incident because "its been some time ago." (Exhibit 3, Depo. of Robert Thomas, 5:22-5:25). Yet in his declaration, dated **May 17, 2007**, attached in support of the defendant's motion for summary judgment, Thomas remembers many more details. For instance, Thomas recalls in his declaration that January 27, 2006, was a sunny day. That he used a dry mop in the lobby at around 7 or 8 a.m. That he did not use a wet mop or apply any wax to the floor that day. That there were no substances on the floor when he dry-mopped the floor that morning, and he was also not aware of the floor in the lobby being wet or having any substances on it at any time that day. (Exhibit 4, Decl. of Robert Thomas, dated 5/17/07, p. 2).

        Montgomery, AL 36103
        (334) 263-7733 (Voice)
        (334) 832-4390 (Fax)
        carolgerard@jaylewislaw.com
        ASB-1075-L66G

**CERTIFICATE OF SERVICE**

    I hereby certify that on the __12th__ day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such following to the following:

James J. DuBois

        /s/ CAROL GERARD
        OF COUNSEL